318 S.E.2d 50

**William SATTLER**

v.

**James O. HOLLIDAY, etc.**

**William SATTLER**

v.

**Larry LOSCH, etc.**

**Nos. 16145, 16205.**

Supreme Court of Appeals of
West Virginia.

June 29, 1984.

Ernest V. Morton, Jr. and Michael C. Farber, Jr., Webster Springs, for petitioner (both cases).

No appearance for respondent (both cases).

HARSHBARGER, Justice:

Sattler has filed two petitions for writs involving former Nicholas County Sheriff Darrell Johnson about his involvement in burning Sattler's tavern, "Rebel Shelter". He wants mandamus against prosecutor Larry Losch to provide him, or a special master, with information in the prosecutor's files, including a police report related to the fire and confessions by Deputies Bennett and Dillon about the fire. Sattler has information and reason to believe that Johnson was involved, and that Losch is withholding the documents because he and Johnson are political friends. Sattler needs the prosecutor's files to determine whether he can sue Johnson.

He also seeks prohibition to prevent Judge Holliday from ruling on Johnson's motion to suspend execution of his remaining jail sentence on his plea of *nolo contendere* to aiding and abetting an unlawful

assault, an incident separate from the arson. Johnson, charged with assault, pleaded to a lesser offense in exchange for the prosecutor's promise that there would be "no further criminal prosecution of Darrell Johnson with respect to any matters as to which information is presently in the possession of the State of West Virginia by Larry E. Losch, Nicholas County Prosecuting Attorney."[1] Sattler contends that at the time this agreement was made, Losch had the police reports and written confessions of the two deputies that implicated Johnson in the arson of his tavern. This material, however, was not presented to Judge Holliday for review before he accepted the plea, so the judge imposed sentence without being fully informed about Johnson's other alleged crimes. Sattler believes the judge should have this information before he rules on Johnson's motion to suspend his jail sentence.

I.

Sattler presented no law or support for his proposition that he is entitled to copies of the police report and confessions. Our research reveals that the only possible justification for requiring a prosecutor and/or police to disclose information to victims would be W.Va.Code, 29B-1-1, *et seq.*, our Freedom of Information Act.

Enacted in 1977, it has not been interpreted by this Court. Its avowed purpose is to open the workings of government to the public so that the electorate may be informed and retain control; and it requires that its provisions be liberally construed to carry out that purpose. Code, 29B-1-1.

Public records[2] are available to every person[3] for copying and inspection when there has been a request made to the custo-

---

1. There was a paragraph in the plea agreement that West Virginia would be free to prosecute Johnson for murder and/or embezzlement of public funds, should evidence of such become known to the prosecutor.

2. W.Va.Code, 29B-1-2(4):

 " 'Public record' includes any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body."

3. W.Va.Code, 29B-1-2(2):

 " 'Person' includes any natural person, corporation, partnership, firm or association."

dian,[4] and when they are not specifically exempted from disclosure.[5]

The exemptions in our statute are similar to those in the federal Freedom of Information Act, 5 U.S.C. § 552, and other state acts. *See generally,* Braverman and Heppler, *A Practical Review of State Open Records Laws,* 49 Geo.Wash.L.Rev. 720 (1980–81). Most states include an exemption for law enforcement and investigatory information. Annot., Validity, Construction, and Application of Statutory Provisions Relating to Public Access to Police Records, 82 A.L.R.3d 19 (1978 and Supp.). Our state law enforcement records exemption is found in paragraph (4) of W.Va. Code, 29B–1–4:

> Records of law-enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating to law enforcement.

It differs from the federal exemption because the amended federal FOIA, 5 U.S.C. § 552(b)(7), lists six purposes for which law enforcement records may be exempted from disclosure, but requires disclosure in all other circumstances.[6]

The federal law before the 1974 amendment was similar to ours, and had been interpreted to permit a blanket exemption for all law enforcement and investigatory records. *See* Annot., What Constitutes Investigatory Files Exempt From Disclosure Under Freedom of Information Act (5 U.S. C.S. § 552(b)(7)), 17 A.L.R.Fed. 522, 530–533 (1973 and Supp.). The public had no access to them at all. The United States Supreme Court ruled that Congress' 1974 amendment of exemption (b)(7) was intended to give the public greater access to investigatory records. *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 164, 95 S.Ct. 1504, 1523, 44 L.Ed.2d 29, 55 (1975). Although our law enforcement records exemption was adopted after the federal exemption had been amended, it did not include the new language comparable to the federal statute which enlarged access to these records. It would initially appear to create a blanket exemption.

Nonetheless, a good argument could be made that material should only be exempt if it protects an interest that weighs more greatly than the public's right to know. We have no evidence of what interests are intended to be protected by nondisclosure in this particular case, especially after the investigation has ceased and no charges have been filed. We have been admonished to make decisions in favor of disclosure. W.Va.Code, 29B–1–1.

 The matter of disclosure of these records is not properly before us, however. W.Va.Code, 29B–1–5(1) gives a party aggrieved by a public body's failure to disclose records the right to institute proceed-

---

4. W.Va.Code, 29B–1–2(1):
 "'Custodian' means the elected or appointed official charged with administering a public body."
 W.Va.Code, 29B–1–3(2):
 "A request to inspect or copy any public record of a public body shall be made directly to the custodian of such public record."

5. W.Va.Code, 29B–1–3(1):
 "Every person has a right to inspect or copy any public record of a public body in this State, except as otherwise expressly provided by section four [§ 29B–1–4] of this article."

6. 5 U.S.C. § 552(b):
 "This section does not apply to matters that are—

 . . . . .

 "(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel."

ings in the circuit court of the county in which the records are stored. As the circuit court has not been given an opportunity to evaluate the propriety of Mr. Losch's refusal to disclose these reports, and considering that no attempt has been made to get these documents from the police department, we find that this petition was improvidently granted and deny the writ against Losch.

## II.

Sattler has not challenged the plea agreement between the government and Johnson, as the petitioner did in *Myers v. Frazier*, 173 W.Va. 657, 319 S.E.2d 782 (1984). He attempts instead to prohibit the judge from suspending Johnson's sentence until he has reviewed evidence against Johnson of other possible criminal activities. Johnson had been in jail over six months when he applied for a suspended sentence.

 Our law about suspended sentences is in W.Va.Code, 62–12–3:

Whenever, upon the conviction of any person eligible for probation under the preceding section [§ 62–12–2], it shall appear to the satisfaction of the court that the character of the offender and the circumstances of the case indicate that he is not likely again to commit crime and that the public good does not require that he be fined or imprisoned, the court, upon application or of its own motion, may suspend the imposition or execution of sentence and release the offender on probation for such period and upon such conditions as are provided by this article; *but in no case,* except as provided by the following section [§ 62–12–4], *shall the court have authority to suspend the execution of a sentence after the convicted person has been imprisoned for sixty days under the sentence.* (Emphasis supplied.)

This proposition, therefore, is moot because the judge has lost jurisdiction to suspend his sentence.

Writs denied.

McGRAW, J., did not participate in the decision of this case.